**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Stephanie Henry, individually and on behalf of all others similarly situated,<br><br>　　　　　　*Plaintiff*,<br><br>vs.<br><br>Campbell Soup Company<br><br>　　　　　　*Defendant* | Case No. 1:22-cv-431<br><br>**JURY TRIAL DEMANDED** |

**Class Action Complaint**



*An example product sold by Defendant.  The product includes added MSG.*

# Table of Contents

I.     Introduction. .............................................................................................................. 1

II.    Parties. ....................................................................................................................... 1

III.   Jurisdiction and Venue. .............................................................................................. 1

IV.    Facts. .......................................................................................................................... 2

      A.    Free glutamates. ............................................................................................. 2

      B.    MSG. ............................................................................................................... 3

      C.    Labelling a food that contains free glutamates "No MSG" or "No MSG added" is false and misleading. .............................................................. 4

      D.    Defendant makes, markets, and sells products that are labeled "No MSG added," and advertises those products as having "No MSG added." .................... 6

      E.    Defendant's claims and labels are false and misleading because in truth, ingredients containing free glutamates are added to Defendant's products. ........ 10

      F.    Defendant's "NO MSG ADDED" representations are misleading to reasonable consumers. .................................................................................. 11

      G.    Plaintiff was misled by Defendant's misrepresentations. ..................................... 14

V.     Class Action Allegations. ............................................................................................ 16

VI.    Claims. ....................................................................................................................... 18

Jury Demand. ...................................................................................................................... 24

Prayer for Relief. ................................................................................................................. 25

## I.    Introduction.

1.      Defendant makes, sells, and markets many popular brands of prepared foods including cooking broths and stocks.  The products prominently state: "NO MSG ADDED" or "NO ADDED MSG."

2.      By prominently labeling the products "NO MSG ADDED," Defendant led Plaintiff and other reasonable consumers to believe that their products do not contain MSG or MSG-equivalent free glutamates.  But the truth is that the products contain ingredients such as yeast extract that actually do contain MSG.  Accordingly, the products that Defendant prominently labels "NO MSG ADDED" actually do have added MSG.  And by labeling its products in this manner, Defendant misled consumers about its products—and violated the consumer protection laws of many states.

## II.    Parties.

3.      Plaintiff Stephanie Henry is a citizen of New York, domiciled in Queens, New York.  The proposed class (identified below) includes citizens of every state.

4.      Defendant Campbell Soup Company is a New Jersey Corporation with principal place of business at 1 Campbell Place, Camden, New Jersey 08103.  Campbell manufactures and distributes cooking broth and cooking stock products.

## III.    Jurisdiction and Venue.

5.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2).  The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from the Defendant.

6.      The Court has personal jurisdiction over Defendant because Defendant sold the products to consumers in New York, including Plaintiff.

7.      Venue is proper under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d) because Defendant would be subject to personal jurisdiction in this District if this District were a separate state, given that Defendant sold the products to consumers in this District, including Plaintiff.

## IV.    Facts.

### A.    Free glutamates.

8.      Glutamic acid and its salts are known as "free glutamates." Free glutamates provide an "umami" or savory taste to food. Umami taste induces salivary secretion, meaning that it makes your mouth water. This can improve the taste of food.

9.      Free glutamates—and ingredients containing free glutamates—are frequently added to food to improve flavor. Though widespread, this use of free glutamates and ingredients containing them as flavor enhancers is controversial. Many consumers and researchers believe that consumption of free glutamates can lead to adverse health effect such as headaches, increased blood pressure, obesity, and psychiatric illness. [1,2,3]

10.     In addition, many consumers report sensitivity and allergies to foods containing free glutamates. These consumers report negative reactions from eating foods that contain free glutamates including breathing difficulties, chest pain, facial flushing, headaches, numbness or burning pain in the mouth, increased heart rates, sweating, and swelling of the face. [4,5]

11.     For all these reasons, many consumers—including Plaintiff—seek to avoid foods that contain free glutamates.

---

[1] https://www.webmd.com/diet/high-glutamate-foods#1
[2] https://www.medicalnewstoday.com/articles/322303
[3] FDA and Monosodium Glutamate (MSG), FDA Backgrounder, pp. 3-4 (August 31, 1995).
[4] https://www.medicalnewstoday.com/articles/322303
[5] https://www.healthline.com/health/allergies/MSG

**B.    MSG.**

12.    The term "MSG" is an abbreviation of "Monosodium Glutamate."  Monosodium

Glutamate is the sodium salt form of glutamate, which is the most popular form of free glutamate

added to prepared foods.

13.    As the FDA has repeatedly recognized, "while technically MSG is only one of

several forms of free glutamate used in foods, consumers frequently use the term MSG to mean

all free glutamate."[6]

14.    In addition, the free glutamate in MSG is chemically indistinguishable from "free

standing" free glutamate or free glutamate contained in other glutamic acid salts.  People

ultimately metabolize these sources of free glutamate in the same way. [7]

15.    Accordingly, to consumers, the term MSG means any free glutamate.  And the

only reason a consumer might want to avoid consuming foods that contain Monosodium

Glutamate is if they want to avoid consuming free glutamates.

16.    The FDA adopted findings by the Federation of American Societies for

Experimental Biology ("FASEB"), which was retained by the FDA to perform this study, that

naturally occurring free glutamates cause adverse effects just like manufactured free glutamates:

> "Free glutamate can exist in two possible stereoisomeric forms: Dglutamate and L-glutamate. L-glutamate is the predominant natural form and the only form with flavor-enhancing activity. FASEB concluded that MSG symptom complex reactions are related to L-glutamate exposure and that the chemical nature of L-glutamate is the same regardless of the source, i.e., whether manufactured or naturally occurring in the food.

---

[6] FDA and Monosodium Glutamate (MSG), FDA Backgrounder, pp. 3-4 (August 31, 1995); Food Labeling; Declaration of Free Glutamate in Food, 61 Fed. Reg. 48102, 48108 (Sept. 12, 1996) (noting that consumers "use the term 'MSG' to mean all forms of free glutamate that are added to food"—not just the sodium salt form).

[7] https://www.fda.gov/food/food-additives-petitions/questions-and-answers-monosodium-glutamate-MSG

Thus, FASEB found no evidence to support the contention that adverse reactions occur with manufactured but not naturally occurring glutamate." [8]

17.     Because many consumers wish to avoid foods that contain free glutamates, many prepared foods—including the foods sold by Defendant—are prominently labeled "No MSG" and/or "No MSG added."

**C.     Labelling a food that contains free glutamates "No MSG" or "No MSG added" is false and misleading.**

18.     Because consumers use the term "MSG" to refer to free glutamates generally (as opposed to the sodium salt form of free glutamate specifically) a reasonable consumer would understand a claim of "No MSG" or "No MSG added" to mean that a food product labeled or described in this manner does not contain free glutamates—in sodium salt form or otherwise.

19.     And indeed, as explained above, the glutamate in MSG is chemically indistinguishable from "free standing" free glutamate or free glutamate contained in other glutamic acid salts. [9]

20.     In addition, a reasonable consumer would understand the statement "No MSG" and "No MSG added" to mean that the product 1) does not contain any "standalone" free glutamates and also 2) does not contain any ingredients that themselves contain free glutamates. This is because if an ingredient of a product contains free glutamates, then the product itself contains free glutamates.  As a result, it is false and misleading to describe a product that either 1) contains free glutamates or 2) contains ingredients that contain free glutamates as having "No MSG" or "No MSG added."

21.     The FDA has repeatedly recognized this common-sense proposition.

---

[8] Food Labeling; Declaration of Free Glutamate in Food, 61 Fed. Reg. 48102, 48108 (Sept. 12, 1996)

[9] https://www.fda.gov/food/food-additives-petitions/questions-and-answers-monosodium-glutamate-MSG

22.     For example, an FDA Backgrounder on MSG noted:

> While technically MSG is only one of several forms of free glutamate used in foods, consumers frequently use the term MSG to mean all free glutamate. For this reason, FDA considers foods whose labels say "No MSG" or "No Added MSG" to be misleading if the food contains ingredients that are sources of free glutamates, such as hydrolyzed protein.

23.     Likewise, in a notice of proposed rulemaking published in the Federal Register, the FDA explained:

"FDA tentatively finds that consumers are likely to perceive a 'No MSG' or 'No added MSG' claim on a label as indicating the absence of all forms of free glutamate in the food.  Such claims encourage consumers wishing to avoid free glutamate to purchase a food by representing the food as free of MSG.  … [W]hile technically such foods bearing a claim about the absence of MSG do not contain the ingredient monosodium glutamate, they frequently contain levels of free glutamate that cause claims like 'No MSG' and 'No added MSG' to be misleading." [10]

"A related problem is the use of claims such as 'No MSG' and 'No added MSG' on foods that contain substantial amounts of naturally occurring free glutamate, such as tomato paste and certain cheeses.  Although such foods do not contain MSG itself, they contain ingredients with concentrations of free glutamate that function as flavor enhancers like MSG.  Because of their free glutamate content, these foods are as likely to cause or contribute to an MSG symptom complex reaction as a food that contains a comparable amount of MSG.  A claim such as 'No MSG' is misleading because it implies that the food may be consumed by glutamate-intolerant consumers without risk of a reaction." [11]

24.     The FDA concluded:

"A food that bears a false or misleading claim about the absence of MSG is misbranded under section 403(a) of the act.  FDA has repeatedly advised consumers and industry that it considers such claims as 'No MSG' and 'No added MSG' to be misleading when they are used on the labels of foods made with ingredients that contain substantial levels of free glutamate." [12]

---

[10] Food Labeling; Declaration of Free Glutamate in Food, 61 Fed. Reg. 48102, 48108 (Sept. 12, 1996)
[11] *Id*.
[12] *Id*.

25.     Moreover, on November 19, 2012, the FDA expressly clarified that, under section 403(a) of the Food, Drug, and Cosmetic Act, foods containing any form of free glutamate—and not just monosodium glutamate specifically—"cannot claim 'No MSG' or 'No added MSG' on their packaging" because such a label would be misleading to reasonable consumers [13], [14]:

> **How can I know if there is MSG in my food?**
>
> FDA requires that foods containing added MSG list it in the ingredient panel on the packaging as monosodium glutamate. However, MSG occurs naturally in ingredients such as hydrolyzed vegetable protein, autolyzed yeast, hydrolyzed yeast, yeast extract, soy extracts, and protein isolate, as well as in tomatoes and cheeses. While FDA requires that these products be listed on the ingredient panel, the agency does not require the label to also specify that they naturally contain MSG. However, foods with any ingredient that naturally contains MSG cannot claim "No MSG" or "No added MSG" on their packaging. MSG also cannot be listed as "spices and flavoring."

**D.     Defendant makes, markets, and sells products that are labeled "No MSG added," and advertises those products as having "No MSG added."**

26.     Many prepared foods that do not contain any free glutamates are labeled "No MSG" and "No MSG added."  The reason many prepared foods are labeled this way is because, as explained above, whether or not a product contains free glutamates matters to consumers. Accordingly, many consumers seek out—and are willing to pay more for—products that do not contain free glutamates such as MSG.  And many consumers avoid—or are willing to pay less for—foods that contain free glutamates such as MSG.

27.     Defendant makes and sells prepared foods that contain free glutamates, including Monosodium Glutamate.  Defendant prominently labels these products "NO MSG ADDED." Defendant also advertises that these products have "no MSG added" on its website and product

---

[13] https://www.fda.gov/food/food-additives-petitions/questions-and-answers-monosodium-glutamate-MSG
[14] The FDA's interpretation of its regulations—even an informal interpretation in a Q&A on the FDA's website—is binding.  *Campen v. Frito-Lay N. Am., Inc., No.* 12-1586 SC, 2013 U.S. Dist. LEXIS 47126, at *28 (N.D. Cal. Apr. 1, 2013).

literature.  This complaint refers to each of Defendant's products labeled or advertised as having

"NO MSG ADDED" as the "No MSG Products."

28.     Illustrative examples of the No MSG Products are shown below:





29.    Each of the No MSG Products is prominently labeled "NO MSG ADDED."  The NO MSG ADDED label is placed on the front and center of the product for emphasis, in bold, large font. The placement and styling of the label is designed to, and actually does, call attention to the "NO MSG ADDED" label.

30.    In addition, Defendant also advertises the fact that its products supposedly do not contain MSG on its website.[15]  For example:

**Do you make any soups, sauces or broths that don't contain added MSG?**    ^

For people looking to avoid MSG, we make nearly 600 different product varieties that don't contain added MSG. These include soups, broths, salsas, cooking sauces, canned pastas and others in our Meals & Beverages portfolio and crackers, chips, pretzels, popcorn, nuts, and other savory snacks in our Snacks portfolio.

Was this helpful?   👍 (6)   👎 (7)

---

[15] https://www.campbellsoupcompany.com/about-us/faqs/

**How do I know if my Campbell product contains MSG?**    ⌃

If a Campbell product contains monosodium glutamate (MSG), the ingredient will be listed in our product ingredient statement.

Was this helpful?  👍 (5)  👎 (2)

**How would I know if MSG is added to this product?**    ⌃

We follow all government regulations regarding the labeling of our products. In the case of MSG, the term Monosodium Glutamate will be clearly listed in the ingredient statement.

Was this helpful?  👍 (4)  👎 (2)

31.    Based on these representations, a reasonable consumer would understand that Defendant's No MSG Products do not contain any free glutamates, including specifically monosodium glutamate.  A reasonable consumer would also understand that Defendant's No MSG Products do not contain any ingredients that themselves contain free glutamates.

32.    Defendant labeled its products "NO MSG ADDED" because it intends for people to rely on the labels and to believe that the No MSG Products do not contain free glutamates, nor do they contain ingredients that themselves contain free glutamates.

33.    The No MSG Products also include—in small lettering designed to blend into the background—the statement "small amount of glutamate occurs naturally in yeast extract."   This is shown in the magnified depiction below:



9

34. As explained below, a reasonable consumer would not notice this qualifying language. Moreover, even as qualified, a reasonable consumer would understand the "NO MSG ADDED" label to mean that no free glutamates were added to the product.

**E. Defendant's claims and labels are false and misleading because in truth, ingredients containing free glutamates are added to Defendant's products.**

35. The truth, however, is that the No MSG Products do contain ingredients that contain free glutamates—including specifically monosodium glutamate. And indeed, Defendant adds these ingredients to the No MSG Products specifically for the purpose of giving the products an "umami" taste. As a result, Defendant's "No MSG added" labels and representations are false and misleading.

36. No MSG Products contain added free glutamates. In fact, the FDA has specifically recognized that it is misleading to label a product "NO MSG" or "NO MSG ADDED" when it has the particular, free-glutamate-containing ingredients that are in Defendant's products.

37. For example, here is a listing of the ingredients in Defendant's Swanson Chicken Broth (pictured above with a prominent "NO MSG ADDED" label):

**Ingredients**

Chicken Stock, Contains Less Than 2% Of: Mirepoix (Carrots, Celery, Onions), Salt, Chicken Broth*, Cane Sugar, Natural Flavoring, Onions*, Yeast Extract, Chicken Fat. *Dried

38. One of the listed ingredients, "yeast extract" is a substantial source of free glutamates. In fact, it even contains monosodium glutamate. [16]

---

[16] See, e.g, https://www.livestrong.com/article/71755-autolyzed-yeast-extract/ (noting that autolyzed yeast extract naturally monosodium glutamate, i.e., MSG);  ; https://culinarylore.com/ingredients:what-is-autolyzed-yeast-extract-in-foods/;

39.     Yeast extract, found in Defendant's No MSG Products, is an example that the FDA provides on its website of added ingredients that make a "No MSG" or No MSG added" claim misleading. [17]

40.     Moreover, these ingredients are not ingredients that happen to be, or are necessarily a part of, the No MSG Products (such as chicken, which is a basic, and necessary, ingredient in chicken soup). Rather, Defendants add these ingredients to their products for taste, specifically because these ingredients include a substantial amount of free glutamates.

41.     Thus, labeling the No MSG Products "NO MSG ADDED" is misleading and false, because those products actually do contain free glutamates—including specifically monosodium glutamate.

**F.      Defendant's "NO MSG ADDED" representations are misleading to reasonable consumers.**

42.     As the FDA has expressly stated, it is misleading to label a product "NO MSG" or "NO MSG ADDED" if that product contains free glutamates, or if that product contains ingredients that contain free glutamates. [18]

43.     Based on the fact that Defendant labeled the No MSG Products "NO MSG ADDED," a reasonable consumer would expect that those products do not contain free glutamates, including specifically monosodium glutamate. A reasonable consumer would also

---

[17] https://www.fda.gov/food/food-additives-petitions/questions-and-answers-monosodium-glutamate-MSG

[18] https://www.fda.gov/food/food-additives-petitions/questions-and-answers-monosodium-glutamate-MSG; *see Campen v. Frito-Lay N. Am., Inc*., No. 12-1586 SC, 2013 U.S. Dist. LEXIS 47126, at *25-29 (N.D. Cal. Apr. 1, 2013) ("The FDA made clear that even though MSG and ingredients that are sources of MSG must be labeled by their proper names, a manufacturer cannot say that a product containing an ingredient that is a source of MSG, like torula yeast, therefore contains 'No MSG.'").

expect that those products do not contain any ingredients that themselves contain free glutamates.

44.     Defendant's products state—in a very small font—"small amount of glutamate occurs naturally in yeast extract."  This qualifying statement does not make Defendant's "NO MSG ADDED" claims truthful or not misleading.

45.     Even as qualified, the "NO MSG ADDED" label is false and misleading, for three separate reasons.

46.     First, a reasonable consumer would not notice the statement that a "small amount of glutamate occurs naturally in yeast extract."  In fact, Defendant designed the statement specifically not to be noticed by reasonable consumers.  The qualifying statements are off to the side, in a faded color, and in a much smaller font than the NO MSG ADDED label.  As a result, a reasonable consumer would focus on the "NO MSG ADDED" label, and not notice the qualifying statements.  And this is exactly what happened to Plaintiff, who saw and relied on the large "NO MSG ADDED" label but did not even notice, much less read, the additional qualifying statements.

47.     Second, if a consumer did happen to notice the "small amount of glutamate occurs naturally in yeast extract" statement, that would not render the product packaging as a whole true or not misleading.

48.     A reasonable consumer would expect qualifying language to be consistent with, and not directly contrary to, the prominent statement that the qualifying statement modifies. Thus, a reasonable consumer would interpret qualifying language in a manner consistent with the language it qualifies.

49.     When coupled with the prominent statement "NO MSG ADDED," a reasonable consumer would interpret this statement to convey that the naturally occurring glutamates are not "MSG," i.e., the very free glutamates that concern consumers and the FDA. [19]   This interpretation makes the qualifier consistent with, rather than directly contradictory to, the prominent NO MSG statement.  But this interpretation, although reasonable, would be wrong—the added free glutamates are exactly the kind that consumers are worried about.  And so even if a consumer read the qualifying statement, they would be misled.

50.     Moreover, a reasonable consumer would interpret this qualifying statement to mean that those non-MSG glutamates that happen to be in ingredients are necessary to make the basic product (such as chicken) as opposed to an optional ingredient added specifically for taste (such as yeast extract).  But in fact, Defendant adds ingredients containing MSG and other free glutamates specifically for taste.

51.     This interpretation is reasonable because it makes the "NO MSG ADDED" claim consistent with the qualifying statement, as opposed to contradictory and confusing.  But again, this reasonable interpretation results in consumers being misled.

52.     Third, a reasonable consumer would not expect a product to "qualify" a prominently displayed false statement with a statement in tiny print that directly contradicts it.  If a consumer reads such a contradictory, qualifying statement, it is confusing (not clarifying).  Thus, such a contradictory statement does not make the labeling truthful overall.

53.     Here, if a consumer took Defendant's "small amount of glutamate occurs naturally" statement to mean that the product has added MSG, this would directly contradict the

---

[19] For example, bound glutamates (another kind of glutamate that is different from MSG and which does not have the same reported health effects as free glutamates and MSG).

prominent "NO MSG ADDED" claim. This would only leave the consumer confused, and would not make the NO MSG ADDED claim truthful or not misleading.

54. Whether a product contains free glutamates is material to a reasonable consumer. As explained above, many consumers and researchers believe that consumption of free glutamates can lead to adverse health effects. In addition, many consumers report sensitivity and allergies to foods containing free glutamates. Accordingly, many consumers—including Plaintiff—seek to avoid foods that contain free glutamates such as monosodium glutamate.

55. Defendant's false statements increased the demand for the No MSG Products. As a result, Defendant was able to charge more for its No MSG Products than it would have been able to had the packaging and ads been truthful. Accordingly, as a direct result of Defendant's false statements, Defendant was able to charge a price premium for its No MSG Products. As purchasers of the No MSG Products, Plaintiff and each member of the proposed class paid this price premium and, as a result, sustained an economic injury as a result of Defendant's false statements.

**G.    Plaintiff was misled by Defendant's misrepresentations.**

56. Plaintiff has purchased Defendant's Swanson Chicken Broth, most recently in early 2022. A picture of the chicken broth purchased by Plaintiff is shown below:

14



57.     The package was prominently labeled "No MSG added".  Plaintiff read and relied on the statement when purchasing the product.  Plaintiff did not notice the qualifying language "small amount of glutamate occurs naturally in yeast extract" when she purchased the product.

58.     Plaintiff tries to avoid eating foods that include MSG or free glutamates.  Plaintiff would not have purchased the product at the price she paid if she had known that the products actually do contain free glutamates.

59.     Plaintiff would purchase the product again if it actually did not contain any free glutamates (i.e., if the product was sold as advertised).  Plaintiff, however, faces an imminent

threat of harm because she will not be able to rely on the labels in the future, and thus will not be able to purchase the products.

**V.    Class Action Allegations.**

60.    Plaintiff brings certain claims on behalf of the proposed class of: all persons who purchased a No MSG Product in the United States during the applicable statute of limitations (the "Nationwide Class").

61.    For other claims, Plaintiff brings those claims on behalf of a subclass of consumers who live in the identified states (the "Consumer Protection Subclass").

62.    For certain claims, Plaintiff also brings those claims on behalf of a subclass of consumers who, like Plaintiff, purchased No MSG Products in New York (the "New York Subclass").

63.    The following people are excluded from the Class and the Subclasses: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

### *Numerosity*

64.    The proposed class contains members so numerous that separate joinder of each member of the class is impractical. Based on the pervasive distribution of No MSG Products, there are millions of proposed class members.

### *Commonality*

65.    There are questions of law and fact common to the proposed class.  Common questions of law and fact include, without limitation:

- whether the No MSG Products contain free glutamates

- whether Defendant's labeling of the No MSG Products as "NO MSG ADDED" is misleading to a reasonable consumer

- whether Defendant violated state consumer protection laws

- whether Defendant committed a breach of express warranty

- damages needed to reasonably compensate Plaintiff and the proposed class.

### *Typicality*

66.    Plaintiff's claims are typical of the proposed class.  Like the proposed class, Plaintiff purchased No MSG Products.

### *Predominance and Superiority*

67.    The prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent or varying adjudication with respect to individual members, which would establish incompatible standards for the parties opposing the class. For example, individual adjudication would create a risk that breach of the same express warranty is found for some proposed class members, but not others.

68.    Common questions of law and fact predominate over any questions affecting only individual members of the proposed class. These common legal and factual questions arise from central issues which do not vary from class member to class member, and which may be determined without reference to the individual circumstances of any particular class member. For

example, a core liability question is common: whether Defendant's "No MSG added" labeling is false and misleading.

69.     A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical.  It would be unduly burdensome to have individual litigation of millions of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

## VI.    Claims.

### Count I: Violations of State Consumer Protection Acts
### (on behalf of Plaintiff and the Consumer Protection Subclass)

70.     Plaintiff incorporates each and every factual allegation set forth above.

71.     This count is brought on behalf of Plaintiff and the Consumer Protection Subclass for violations of the following state consumer protection statutes:

| State | Statute |
|---|---|
| Arizona | Ariz. Rev. Stat. §§ 44-1521, and the following. |
| Arkansas | Ark. Code § 4-88-101, and the following. |
| California | Cal. Bus. & Prof. Code § 17200, and the following; *Id.* §17500, and the following Cal. Civ. Code §1750 and the following; |
| Colorado | Colo. Rev. Stat. Ann. § 6-1-101, and the following. |
| Connecticut | Conn. Gen Stat. Ann. § 42- 110, and the following. |
| Delaware | 6 Del. Code § 2513, and the following. |
| Washington, D.C. | D.C. Code § 28-3901, and the following. |
| Georgia | Ga. Code Ann. § 10-1-390, and the following. |
| Hawaii | Haw. Rev. Stat. § 480-2, and the following. |
| Idaho | Idaho Code. Ann. § 48-601, and the following. |
| Illinois | 815 ILCS § 501/1, and the following. |
| Kansas | Kan. Stat. Ann. § 50-623, and the following. |
| Louisiana | LSA-R.S. § 51:1401, and the following. |
| Maine | Me. Rev. Stat. Ann. Tit. 5, § 207, and the following. |
| Maryland | Md. Code Ann. Com. Law, § 13-301, and the following. |
| Massachusetts | Mass. Gen Laws Ann. Ch. 93A, and the following. |
| Michigan | Mich. Comp. Laws Ann. § 445.901, and the following. |

| Minnesota | Minn. Stat. § 325F, and the following. |
|---|---|
| Montana | Mont. Code Ann. §§ 30-14-101, and the following. |
| Missouri | Mo. Rev. Stat. § 407, and the following. |
| Nebraska | Neb. Rev. St. § 59-1601, and the following. |
| Nevada | Nev. Rev. Stat. § 41.600, and the following. |
| New Hampshire | N.H. Rev. Stat. § 358-A:1, and the following. |
| New Jersey | N.J. Stat. Ann. § 56:8, and the following. |
| New Mexico | N.M. Stat. Ann. § 57-12-1, and the following. |
| New York | N.Y. Gen. Bus. Law § 349, and the following. |
| North Carolina | N.C. Gen Stat. § 75-1.1, and the following. |
| North Dakota | N.D. Cent. Code § 51-15, and the following. |
| Ohio | Ohio Rev. Code Ann. § 1345.01, and the following. |
| Oklahoma | Okla. Stat. tit. 15 § 751, and the following. |
| Oregon | Or. Rev. Stat. § 646.605, and the following. |
| Pennsylvania | 73 P.S. § 201-1, and the following. |
| Rhode Island | R.I. Gen. Laws § 6-13.1- 5.2(B), and the following. |
| South Carolina | S.C. Code Ann. § 39-5-10, and the following. |
| South Dakota | S.D. Codified Laws § 37-24-1, and the following. |
| Tennessee | Tenn. Code Ann. § 47-18-101, and the following. |
| Texas | Tex. Code Ann., Bus. & Con. § 17.41, and the following. |
| Utah | Utah Code. Ann. § 13-11-175, and the following. |
| Vermont | 9 V.S.A. § 2451, and the following. |
| Virginia | Va. Code Ann. § 59.1-199, and the following. |
| Washington | Wash. Rev. Code § 19.86.010, and the following. |
| West Virginia | W. Va. Code § 46A, and the following. |
| Wisconsin | Wis. Stat. § 100.18, and the following |
| Wyoming | Wyo. Stat. Ann. § 40-12-101, and the following. |

72.     Each of these statutes prohibits unfair, unconscionable, and/or deceptive acts or practices in the course of trade or commerce or in connection with the sale of goods or services to consumers.  Defendant's misleading packaging and ads violate each statute's prohibitions.

73.     The sale of the No MSG Products is the sale of goods to consumers. Hundreds of thousands (or potentially millions) of consumers purchase these products.

74.     As alleged in detail above, Defendant's misrepresentations were misleading to Plaintiff and to reasonable consumers.  As the manufacturer, Defendant was aware that the No

MSG Products contain free glutamates/MSG. Accordingly, Defendant was aware that its packaging and ads were misleading to reasonable consumers.

75.     For applicable statutes, Plaintiff provided written notice on January 21, 2022 and a demand for correction (together with notice of certain other violations alleged in this Complaint). Upon the expiration of any governing statutory notice period, Plaintiff and the class seek all available injunctive or monetary relief.

76.     Plaintiff and class members were injured as a direct and proximate result of Defendant's conduct, and this conduct was a substantial factor in causing them harm, because (a) they would not have purchased the No MSG Products at the price they paid if they had known that they contained free glutamates/MSG, and (b) they overpaid for the products because they are sold at a price premium due to Defendant's misrepresentations.

### Count II: Violation of New York Gen. Bus. Law § 349
### (on behalf of Plaintiff and the New York Subclass)

77.     Plaintiff incorporates each and every factual allegation set forth above.

78.     Plaintiff brings this cause of action individually and for the New York Subclass, seeking statutory damages available under New York Gen. Bus. Law § 349 (among other relief).

79.     Plaintiff and the Subclass purchased No MSG Products in New York.

80.     Defendant's false and misleading "NO MSG ADDED" claims are consumer-oriented.

81.     Defendant's misrepresentations have a broad impact on consumers at large, i.e., the hundreds of thousands (or potentially millions) of New Yorkers that purchase these products. These transactions recur every day.

82.     Defendant's "NO MSG ADDED" misrepresentations were material. As alleged in detail above, these misrepresentations were important to consumers and affected their choice

to purchase No MSG Products. And, as alleged in detail above, these misrepresentations were likely to mislead reasonable consumers.

83.     Defendant's misrepresentations were willful and knowing. Because Defendant makes and sells the No MSG Products, Defendant knows what ingredients they contain and knows that those ingredients include free glutamates/MSG. As a result, Defendant knows that the No MSG Products contain glutamates/MSG. Furthermore, Defendant controls its labeling, knowingly put on the "NO MSG ADDED" representations, and knows the plain meaning of "NO MSG ADDED."

84.     Plaintiff and Subclass members were injured as a direct and proximate result of Defendant's conduct, and this conduct was a substantial factor in causing them harm, because they did not get what they paid for (e.g., cooking broths and stocks that do not contain free glutamates or MSG) and they overpaid for the products because the products are sold at a price premium due to Defendant's misrepresentations.

85.     Plaintiff and the Subclass seek statutory damages of $50, treble damages, an injunction, reasonable attorney fees, and all other available relief. *See* N.Y. Gen. Bus. Law § 349 (h).

### Count III: Violation of New York Gen. Bus. Law § 350
### (on behalf of Plaintiff and the New York Subclass)

86.     Plaintiff incorporates each and every factual allegation set forth above.

87.     Plaintiff brings this cause of action individually and for the New York Subclass, seeking statutory damages available under New York Gen. Bus. Law § 350 (among other relief).

88.     Plaintiff and the Subclass purchased No MSG Products in New York.

89.     Defendant's false and misleading "NO MSG ADDED" claims impacted consumers at large. Defendant's misrepresentations have a broad impact on consumers at large,

21

i.e., the hundreds of thousands (or potentially millions) of New Yorkers that purchase No MSG Products. These transactions recur every day.

90.    Defendant's "NO MSG ADDED" claims were deceptive and misleading in a material way. As alleged in detail above, these "NO MSG ADDED" misrepresentations were important to consumers and affected their choice to purchase No MSG Products. And these misrepresentations were likely to mislead reasonable consumers.

91.    Plaintiff and the Subclass saw and relied on Defendant's "NO MSG ADDED" misrepresentations.

92.    Defendant's misrepresentations were willful and knowing. Because Defendant makes and sells the No MSG Products, Defendant knows what ingredients they contain and knows that those ingredients include free glutamates/MSG. As a result, Defendant knows that the No MSG Products contain glutamates/MSG. Furthermore, Defendant controls its labeling, knowingly put on the "NO MSG ADDED" representations, and knows the plain meaning of "NO MSG ADDED."

93.    Plaintiff and Subclass members were injured as a direct and proximate result of Defendant's conduct, and this conduct was a substantial factor in causing them harm, because they did not get what they paid for (e.g., cooking broths and stocks that do not contain free glutamates or MSG) and they overpaid for the products because the products are sold at a price premium due to Defendant's misrepresentations.

94.    Plaintiff and the Subclass seek statutory damages of $500, treble damages, an injunction, reasonable attorney fees, and all other available relief. See N.Y. Gen. Bus. Law § 350-e (3).

## Count IV: Breach of Express Warranty
### (on behalf of Plaintiff and a Nationwide Class)

95.     Plaintiff incorporates by reference each and every factual allegation set forth above.

96.     Plaintiff brings this count individually and for the Nationwide Class.

97.     Defendant, as the designer, manufacturer, marketer, distributor, supplier, and/or seller of the NO MSG Products, issued material, written warranties by representing that the products had "NO MSG ADDED."  This was an affirmation of fact about the products (i.e., a description of the ingredients) and a promise relating to the goods.

98.     This warranty was part of the basis of the bargain and Plaintiff and members of the Nationwide Class relied on this warranty.

99.     In fact, the No MSG Products do not conform to the above-referenced representation because, as alleged in detail above, they contain free glutamates/MSG.  Thus, the warranty was breached.

100.     Plaintiff provided Defendant with notice of this breach of warranty, by mailing a notice letter to Defendant's headquarters, on January 21, 2022.

101.     Plaintiff and the Nationwide Class members were injured as a direct and proximate result of Defendant's conduct, and this conduct was a substantial factor in causing them harm, because (a) they would not have purchased the No MSG Products at the price they paid if they had known that they contained free glutamates/MSG, and (b) they overpaid for the products because they are sold at a price premium due to Defendant's misrepresentations.

## Count V: Breach of the Magnuson-Moss Warranty Act
### (on behalf of Plaintiff and the Nationwide Class)

102.     Plaintiff incorporates by reference each and every factual allegation set forth above.

103.    Plaintiff brings this count individually and for the Nationwide Class.

104.    Defendant supplied No MSG Products to consumers and the No MSG Products are consumer products.

105.    Defendant issued material, written warranties by representing that the products had "NO MSG ADDED."  This was an affirmation of fact about the material in the products (i.e., a description of the ingredients) and a promise relating to the goods.

106.    Defendant's "NO MSG ADDED" representations relate to the nature of the ingredients and promises that such ingredients are MSG and glutamate-free.

107.    This warranty was part of the basis of the bargain and Plaintiff and members of the Nationwide Class relied on this warranty.

108.    In fact, the No MSG Products do not conform to the above-referenced representation because, as alleged in detail above, they contain ingredients that contain free glutamates/MSG.  Thus, the warranty was breached.

109.    Plaintiff provided Defendant with notice of this breach of warranty (including her intent to seek classwide relief), by mailing a notice letter to Defendant's headquarters, on January 21, 2022.

110.    Plaintiff and the Nationwide Class members were injured as a direct and proximate result of Defendant's conduct, and this conduct was a substantial factor in causing them harm, because (a) they would not have purchased the No MSG Products at the price they paid if they had known that they contained free glutamates/MSG, and (b) they overpaid for the products because they are sold at a price premium due to Defendant's misrepresentations.

**Jury Demand.**

111.    Plaintiff demands a jury trial on all issues so triable.

**Prayer for Relief.**

112.    Plaintiff seeks the following relief individually and for the proposed class and subclasses:

- An order certifying the asserted claims, or issues raised, as a class action;

- A judgment in favor of Plaintiff and the proposed class;

- Damages, statutory damages (including under N. Y. Gen. Bus. Law § 349 (h) and § 350-e (3)), treble damages, and punitive damages where applicable;

- Restitution;

- Disgorgement, and other just equitable relief;

- Pre- and post-judgment interest;

- An injunction prohibiting Defendant's deceptive conduct, as allowed by law;

- Reasonable attorneys' fees and costs, as allowed by law; and

- Any additional relief that the Court deems reasonable and just.

Dated: January 25, 2022                              Respectfully submitted,

                                                             By: */s/ Simon Franzini*

                                                             Simon Franzini (Cal. Bar No. 287631*)*
                                                             *(pro hac vice application forthcoming)*
                                                             simon@dovel.com
                                                             Jonas B. Jacobson (Cal. Bar No. 269912*)*
                                                             *(pro hac vice application forthcoming)*
                                                             jonas@dovel.com
                                                             Alex Van Dyke (Cal. Bar No. 340379)
                                                             *(pro hac vice application forthcoming)*
                                                             alex@dovel.com
                                                             DOVEL & LUNER, LLP
                                                             201 Santa Monica Blvd., Suite 600
                                                             Santa Monica, California 90401
                                                             Telephone: (310) 656-7066
                                                             Facsimile: (310) 656-7069

Zack Broslavsky (State Bar No. 241736)
*(pro hac vice application forthcoming)*
zbroslavsky@bwcounsel.com
BROSLAVSKY & WEINMAN, LLP
1500 Rosecrans. Ave, Suite 500
Manhattan Beach, CA 90266
Telephone: (310) 575-2550
Facsimile: (310) 464-3550

*Counsel for Plaintiff and the Proposed Class*