UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

STEPHANIE HENRY, individually and on behalf of others similarly situated,

Plaintiff,

v.

CAMPBELL SOUP COMPANY,

Defendant.

**MEMORANDUM AND ORDER**

22-CV-431 (LDH) (PK)

LASHANN DEARCY HALL, United States District Judge:

Stephanie Henry ("Plaintiff"), individually and on behalf of others similarly situated, brings the instant action against Campbell Soup Company ("Defendant"), asserting claims under New York law for breach of the Magnuson-Moss Warranty Act, breach of express warranty and violations of New York General Business Law ("GBL") §§ 349 and 350 and similar consumer protection statutes of other states and territories. Defendant moves pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint in its entirety.

**BACKGROUND**[1]

"Free glutamate" is a product that consists of glutamic acid and its salts. (Complaint ("Compl.") ¶¶ 8–9, ECF No. 1.) Free glutamate and products that contain free glutamates, are frequently used as flavor enhancers, providing a savory taste to food. (*Id.*) Monosodium Glutamate ("MSG") is the sodium salt form of glutamate and is the most popular form of free glutamate. (*Id.* ¶ 12.) According to the United States Food and Drug Administration ("FDA"), free glutamates standing alone, in MSG or contained in other glutamic acid salts, are chemically indistinguishable. (*Id.* ¶ 14.)

[1] The following facts are from the complaint (ECF No. 1) are assumed to be true for the purpose of deciding the instant motion.

Defendant manufactures and distributes cooking broths and stock products, such as its store brand Swanson Chicken Broth ("Chicken Broth" or "Product").[2] (*Id.* ¶¶ 1, 4.) The front of the Chicken Broth label reads: "NO MSG ADDED," in large, bold font at the center of the product. (*Id.* ¶¶ 56.) Adjacent to the label in smaller font is the following clarifying language: "SMALL AMOUNT OF GLUTAMATE OCCURS NATURALLY IN YEAST EXTRACT" ("Clarifying Language"). (*Id.*)

Plaintiff purchased the Product in early 2022. (*Id.* ¶¶ 2, 56.) According to the complaint, Plaintiff sought to avoid free glutamates and alleges that she read the Product's "NO MSG ADDED" representation on the label to mean that the Product does not contain free glutamates in any form. (*Id.* ¶¶ 46, 57–58.) Plaintiff did not notice or read the Clarifying Language and alleges that a reasonable consumer would similarly not notice the language because it is off to the side, "in a faded color[,]" and in a much smaller font. (*Id.*) Plaintiff alleges she would purchase the Product again if it did not contain any free glutamates and now "faces an imminent threat of harm because she will not be able to rely on the labels in the future." (*Id.* ¶ 59.)

**STANDARD OF REVIEW[3]**

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

---

[2] According to Plaintiff's pre-motion conference letter, Plaintiff represents that she will not seek to represent consumers who purchased USDA-regulated broths, including beef broths. (Pl.'s Pre-Motion Conference Ltr. at 2–3; Def. Mem. at 2 n.2.) Because Plaintiff withdrew any claims relating to the USDA-regulated broths, this memorandum considers only Defendant's Swanson Chicken Broth carton alleged to have been purchased by Plaintiff.

[3] Plaintiff initially sought injunctive relief on behalf of herself and of others similarly situated. (*See* Compl. ¶¶ 75, 85, 94 and 112.) Defendant moved to dismiss this claim under Rule 12(b)(1) of the Federal Rules of Civil Procedure, contending that Plaintiff lacks standing to seek injunctive relief because she cannot demonstrate a likelihood of future injury. (*See* Def.'s Mem. Supp. Mot. to Dismiss ("Def.'s Mem.") at 20–22, ECF No. 31.) In her opposition to Defendant's motion to dismiss, Plaintiff withdrew her request for injunctive relief. (*See* Pl.'s Opp'n at 21 n.5.) Therefore, Defendant's Rule 12(b)(1) arguments are moot and the Court only addresses Defendant's Rule 12(b)(6) arguments.

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of a defendant's liability for the alleged misconduct. *Id*. While this standard requires more than a "sheer possibility" of a defendant's liability, *id*., "[i]t is not the Court's function to weigh the evidence that might be presented at trial" on a motion to dismiss, *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999). Instead, "the Court must merely determine whether the complaint itself is legally sufficient, and, in doing so, it is well settled that the Court must accept the factual allegations of the complaint as true." *Id*. (citations omitted).

## DISCUSSION

### I. New York GBL Claims

Together, GBL sections 349 and 350 prohibit "[d]eceptive acts or practices" and "false advertising" while conducting "any business, trade or commerce, or in the furnishing of any service in this state." *See* GBL §§ 349, 350. "To successfully assert a claim under either section, a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (internal quotation marks and citation omitted). Defendant does not challenge the sufficiency of Plaintiff's allegations with respect to the first or third elements. Rather, Defendant maintains that Plaintiff fails to sufficiently allege that the Product's label is materially misleading. (*See* Def.'s Mem. Supp. Mot. to Dismiss ("Def.'s Mem.") at 8, ECF No. 31.)

In assessing whether a defendant's conduct is materially misleading, the court employs what is known as the reasonable consumer standard. Under that standard, the court asks whether a reasonable consumer would have been misled by the challenged conduct. *See Orlander*, 802

F.3d at 300. When answering that question, "context is crucial." *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013). Perhaps for that reason, Plaintiff maintains that determining whether the label in this case is misleading is not susceptible to a determination on the pleadings. (*See* Pl.'s Mem. L. in Opp'n to Def.'s Mot. Dismiss ("Pl.'s Opp'n") at 16, ECF No. 32.) Certainly, the reasonable consumer inquiry is typically reserved for the later stages of litigation when the parties have had the benefit of discovery. However, that does not mean that courts are foreclosed from endeavoring to make that determination on a motion to dismiss. Indeed, it is long settled that, in certain cases, it is appropriate for a court determine as a matter of law whether an allegedly deceptive advertisement would have misled a reasonable consumer. *See, e.g.*, *Fink*, 714 F.3d at 741 ("It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." (citations omitted)) This is such a case.

Here, Plaintiff complains that the Product's label is materially misleading because it includes the language "NO MSG ADED" when, in fact, the Product contains free glutamates that are naturally occurring in at least one of the Product's ingredients. (*See* Compl. ¶ 41.) That is, according to Plaintiff, "standing alone, the NO MSG ADDED label is indisputably misleading." (Pl. Opp'n at 9.) Of course, the "NO MSG ADDED" language at issue here does not stand alone. It is accompanied by the Clarifying Language. Indeed, in seeking dismissal of Plaintiff's claims, Defendant argues that the inclusion of the Clarifying Language on the Product's label wholly undermines Plaintiff's claim of consumer confusion. (*See* Def.'s Mem.at 9.) The Court agrees.

When determining if a reasonable consumer would have been misled by a product's label, "under certain circumstances, the presence of a disclaimer or similar clarifying language

may defeat a claim of deception." *Fink,* 714 F.3d at 742. As noted by at least one court in this district, "[c]ourts routinely conclude that the presence of a disclaimer, considered in context, precludes the finding that a reasonable consumer would be deceived by the defendant's conduct." *Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386, 390 (E.D.N.Y. 2017) (collecting cases). That said, the mere inclusion of a disclaimer, is not alone dispositive. Instead, a court must look to factors, such as the font size, placement of, and emphasis on, the disclaimer, to determine whether a disclaimer defeats a claim of deception. *See Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 674 (E.D.N.Y. 2017) (finding that "[w]hether or not a disclaimer defeats a claim of deception requires an analysis of 'factors such as the font size and placement of the disclaimer as well as the relative emphasis placed on the disclaimer and the allegedly misleading statement.'" (quoting *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826, 2015 WL 5579872, at *16 (E.D.N.Y. Sept. 22, 2015)).

To this point, Plaintiff directs the Court to a number of cases, where, despite the presence of a disclaimer, the court found that a plaintiff had stated a claim for deception. These cases are, however, distinguishable from the instant action. Let's take, for example, *Mantikas v. Kellogg Co.*, 910 F.3d 633 (2d Cir. 2018). There, the defendant produced Cheez-It crackers and sold its "whole grain" variety in boxes that bore the words "WHOLE GRAIN" or "MADE WITH WHOLE GRAIN" in large print and in the center of each box. *See id.* at 634 The bottom of each box contained a disclaimer stating, "MADE WITH 5G OF WHOLE GRAIN PER SERVING," or, "MADE WITH 8G OF WHOLE GRAIN PER SERVING." *See id.* The plaintiffs alleged that they purchased the defendant's products under the mistaken belief that the grain content was at least predominantly whole grain, when in fact the grain content was

predominantly enriched white flour. *See id.* at 635. The district court dismissed the complaint. *See id.* at 635–36.

On appeal, the Second Circuit reversed. In doing so, the court of appeals rejected the argument that the disclaimers, although accurate, cured any confusion. Indeed, the court found the disclaimers themselves misleading because they falsely implied that the grain content is entirely or at least predominantly whole grain. *See id.* at 639. As such, the court was unmoved by the defendant's argument that a reasonable consumer would not be confused because the side panel of the products' package provided additional nutritional information. *See id.* In this context, the court concluded:

> Reasonable consumers should not be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box. Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging.

*Id*. (alterations and citation omitted).

Unlike in *Mantikas*, the disclaimers here are not themselves misleading. *Id.* at 637. Rather, the Clarifying Language does just that—clarify. And, as Defendant notes, the ingredient list here confirms, rather than contradicts or supplements, the information contained on the front of the package—no MSG is added, but small amounts of glutamates naturally occur in other ingredients.

Likewise, the issues presented by the disclaimer in *Koenig v. Boulder Brands, Inc.*, do not exist here. *See* 995 F. Supp. 2d 274, 288 (S.D.N.Y. 2014). There, the defendants sold what they referred to as their "Smart Balance" fat-free milk products. *See id.* at 277. Importantly, Smart Balance is a combination product whereby each container included two products—fat-free milk and Omega-3s. *Id*. Unlike the milk, the Omega-3 component of the product contained fat.

*Id.* at 277. Plaintiff complained that the Smart Balance products were misleading because they contained the term "fat free" nine times, but actually contained one gram of fat per serving. *Id.* The court described the Smart Balance packaging as follows:

> The top third of each product's front panel features the yellow Smart Balance logo, and is the most prominent part of each front panel. The middle third features the specific name of the product offset by a different background color, and includes the phrase "(1g Fat from Omega-3 Oil Blend)," which appears in small white text underneath the product name. The bottom third depicts a splash of white milk covered by a ribbon of text advertising that the product "Tastes Rich & Creamy like 2% Milk" and has 20–25% more calcium and protein than whole milk. The phrase "(1g Fat from Omega-3 Oil Blend)" is less prominent than all of the other text on the front panel, which is larger, bolder, or capitalized.

*Id.* at 276–278. Moreover, the court noted that although the Omega-3 oil was listed on the ingredient list, the list did not include an asterisk or disclaimer modifying the omega-3 oil blend as containing fat. *Id.* at 278. Against this backdrop, the court concluded that a reasonable consumer may be misled despite the disclaimer, which may be overlooked in favor of the more prominent portions of the product label that touts the product as "Fat Free Milk and Omega-3s." *Id.* at 288.

Here, Defendant's product is not a combination product. Thus, any confusion resulting from representations on a label that might be applicable to one product versus another does not arise here. Moreover, the disclaimer in *Koenig*, which related to the Omega-3 portion of the product, was in direct competition with the multiple messages on the label concerning the milk product. *Id.* at 277–78. Compounding the issue, the messages concerning the milk product were placed prominently above and below the small, unbolded type-faced disclaimer. *Id.* The Clarifying Language here does not similarly lose its prominence. Although the font is smaller, the Clarifying Language is immediately adjacent to the challenged language, and is all capitalized, bolded, and is in a contrasting color. (*See* Compl. ¶ 56.)

Plaintiff also refers the Court to *Stoltz v. Fage Dairy Processing Indus*., 14-CV-3826, 2015 WL 5579872, at *3–4 and *11 (E.D.N.Y. Sept. 22, 2015) and *In re Frito-Lay North America, Inc.*, 12-MD-2413, 2013 WL 4647512, at *16 (E.D.N.Y. Aug. 29, 2013). Both cases, however, are distinguishable. In *Frito-Lay*, the defendants manufactured, marketed, and sold three different chip and bean products. *See* 2013 WL 4647512, at *1. The chip products were packaged with product labels that included the language "MADE WITH ALL NATURAL INGREDIENTS," and along with an explanatory statement: "NO MSG-NO PRESERVATIVES-NO ARTIFICIAL FLAVORS." *Id.* The plaintiffs alleged that the product labels were misleading because the "All Natural" representation led reasonable consumers to believe that, in addition to lacking MSG, preservatives, and artificial flavors, the products also did not include Genetically Modified Organisms ("GMOs") when, in fact, they did. *Id.* at *1–*2. In moving to dismiss the complaint, Defendants argued, among other things, that no reasonable consumer would believe that the products were GMO-free in light of the context (i.e., the explanatory statement). *Id.* at *16. The Court rejected this argument, holding that the inclusion of the explanatory statement did not "extinguish the possibility that a reasonable consumer could be misled into believing that the products were GMO-free." *Id.* In *Stoltz*, Defendants marketed and packaged a line of Greek yogurt products titled "Total 0%." *See* 2015 WL 5579872, at *3–4. Defendants included in fine print on the products' front and top labels the following disclaimer: "All Natural – Nonfat Greek Strained Yogurt." *Id.* at *4. Plaintiffs alleged that the defendants misled consumers by prominently displaying the phrase "Total 0%" on the top and front labels of their products without any explanation, *i.e.*, whether the products were zero percent fat, sugar, carbohydrates, or calories, or any other nutrients, ingredients or qualities that a particular consumer believes to be unhealthy. *Id.* Defendants argued, among

other things, that "a reasonable consumer could not fail to appreciate that the 'Total 0%' claim was qualified by the 'nonfat' language also included on the label." *Id.* at *18. The district court rejected this argument, relying principally upon *Frito-Lay*, because like the disclaimer in *Frito-Lay*, a reasonable consumer could believe that in addition to having zero fat, the product could also have zero sugar, carbohydrates, or other unhealthy ingredients. *Id.*

The issue common to both *Stoltz* and *Frito-Lay* is a broad representation coupled with an overly narrow disclaimer. That is, in both cases, the defendants made a representation that could reasonably be interpreted to have excluded a wide range of ingredients, nutrients, or qualities from the product, and they did not sufficiently narrow that range with their disclaimer. That issue is not present here because Defendant's representation is narrow. Indeed, rather than a broad claim like "All Natural" or "Total 0%," Defendant represents only "NO ADDED MSG." And, the Clarifying Language makes clear that that although Defendant did not add MSG, the product will still include MSG because a "SMALL AMOUNT OF GLUTAMATE OCCURS NATURALLY IN YEAST EXTRACT." Because the representation is narrow, and the Clarifying Language is clear, no reasonable consumer would believe that the Product contains no MSG.[4]

In contrast to the cases relied upon by Plaintiff, the court finds this case analogous to *Bowring* and *Nelson*, two fairly recent cases decided by courts in this district that Defendant relies upon (and Plaintiff tellingly fails to address in her opposition). In *Nelson*, the defendant owned Fosters, which is an Australian-style beer brand. *See* 246 F. Supp. 3d at 670. Foster's beer labels included the image of a red kangaroo, the national symbol of Australia. *See id.* The

[4] Plaintiff also points to *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439 (E.D.N.Y. 2013). But, that case is distinguishable because defendant's products contained a disclaimer on the back of the products whereas here the disclaimer is on the front of the box.

labels also contained the following disclaimer: "BREWED AND PACKAGED UNDER THE SUPERVISION OF FOSTER'S AUSTRALIA LTD, MELBOURNE, AUSTRALIA BY OIL CAN BREWERIES, ALBANY GA AND FORT WORTH TX." *Id*. at 676. Plaintiffs brought, among other claims, GBL claims, alleging that defendants labeling was deceptive in that it led consumers to believe that the beer was imported from Australia. *See id.* at 671. Plaintiffs maintained, moreover, that the disclosure failed to remedy the confusion. *See id.* at 674.

The district court granted defendant's motion to dismiss plaintiffs' GBL claims. *Id.* at 675. In doing so, the court highlighted that the product's label contained an explicit disclaimer, which stated plainly where the product was produced. *See id*. Additionally, the district court found that, because the beer did not have exterior packaging that would obstruct the disclaimer, the disclaimer was visible to the consumer at the time of purchase. *See id.* at 675–76. Ultimately, the district court concluded that it "strains credibility" that "consumers purchase products based on certain of a label's statements or images . . . but are blind to others (e.g., a statement in plain English of where Foster's Beer is brewed) in close proximity on that label." *Id.* at 674.

In *Bowring*, the defendant was a beer distributor that sold beer products, at least some of which were produced in Canada and sold in the United States. *See* 234 F. Supp. 3d at 388. The front panel of the beer products included the word "Imported." *Id.* On the side or back of the products produced in Canada, the following language appeared in a darker and different font: "Imported by Sapporo U.S.A. Inc., New York, NY" followed by "Brewed and canned [or bottled] by Sapporo Brewing Company, Guelph, Ontario, Canada." *Id*. at 388–89 (alteration in original). And, on the side or back of the beer products brewed in Wisconsin, the products did not include the word "Imported," but did include the following language: "Brewed and Bottled

[or Canned] by Sapporo Brewing Company, La Cross, WI for Sapporo U.S.A., New York NY." *Id.* at 389. Defendant marketed its beer products using slogans, such as "[o]riginal Japanese Beer" and images of a Japanese landscape. *Id.* at 388.

Plaintiff brought GBL claims alleging that the beer labels' inclusion of the word "Imported" along with the slogans and images created a misleading impression that the beer was imported from Japan. *Id.* at 389. Upon a motion by defendants, the Court dismissed plaintiff's GBL claims, finding as a matter of law that defendant's conduct would not mislead a reasonable consumer. *See id.* at 391–92. In making its determination, the court noted that for products bearing the word "Imported," that statement was truthful as were the images and slogans, each of which alluded to the company's actual Japanese heritage. *See id.* at 391. That aside, the court found that any purported confusion was defeated by the disclaimer that appeared on the can, which was in a contrasting color, in a visible font, and which made plain that the product's origin was in Canada. *See id.*

Plaintiff's GBL claims similarly fail. As in *Bowring* and *Nelson*, the Court fails to see how a reasonable consumer could purchase the Product based upon the label's "NO MSG ADDED" statement, but somehow miss the Clarifying Language, written "in plain English" that says a "SMALL AMOUNT OF GLUTAMATE OCCURS NATURALLY IN YEAST EXTRACT" in the Product. *See Nelson*, 246 F. Supp. 3d at 674. Furthermore, there was no exterior packaging that would obstruct the disclaimer on Defendant's product. *See id.* Like the plaintiff in *Bowring*, Plaintiff here takes issue with the font size of the disclaimer, arguing that the disclaimer text is "in a much smaller font than the NO MSG ADDED label," which precludes a finding that the disclaimer cures Defendant's misleading statement. (Pl.'s Opp'n at 12.) But the Court rejects this argument. In light of the Clarifying Language being in all caps, bolded,

and in a contrasting color, font size is not enough to undermine the effect of the disclaimer. Similar to the disclaimer in *Bowring*, the Clarifying Language here is in a standalone statement on the front label that clearly states in all caps and in contrasting font that a "SMALL AMOUNT OF GLUTAMATE OCCURS NATURALLY IN YEAST EXTRACT."

In a seeming attempt to downplay the significance of the Clarifying Language, Plaintiff argues that, according to the FDA, "the average consumer is not aware that . . . free glutamate is essentially equivalent to MSG." (Pl.'s Opp'n at 15.) Therefore, according to Plaintiff, a disclaimer announcing the presence of glutamate is still deceptive. (*Id.*) But, Plaintiff takes the FDA's statement out of context. Stated more fully, the FDA guidance first explains the different ways in which free glutamate appears in foods. That is, it: (1) occurs naturally in various foods; (2) occurs in food substances that are used as ingredients in finished foods; or (3) is produced by hydrolysis of protein. (FDA Declaration of Free Glutamate in Food ("FDA Decl."), 61 Fed. Reg. 48102, 48103, 1996 WL 513736 (Sept. 12, 1996), at 2.) The FDA goes on to explain that the first two categories are not required to be declared in an ingredient statement, and that an ingredient containing free glutamate is typically declared in the ingredient statement by its common name. (*Id.*) The FDA then states that because the "average consumer is not aware that ingredients like hydrolyzed soy protein[] [or] autolyzed yeast extract . . . contain free glutamate or that free glutamate is essentially equivalent to MSG," a declaration of these ingredients by their common name does not indicate to a consumer that MSG is present in their food. (*Id.*)

But, Defendant's inclusion of the Clarifying Language on its Product addresses the FDA's concern. The disclaimer language does not implicate the FDA's concern by stating, for example, that yeast extract or hydrolyzed soy is included in the Product. A disclaimer that expressly says as much does.

Next, Plaintiff argues that because Defendant's disclaimer refers to glutamates generally and never discloses the presence of the specific kind of glutamate, it fails to cure the alleged confusion. (Pl.'s Opp'n at 15.) Specifically, Plaintiff states the following:

> [T]here are two types of glutamate: free glutamate, which is problematic, and bound glutamate, which is not. When confronted with a prominent "NO MSG ADDED" representation qualified by the statement "contains small amounts of naturally occurring glutamates," consumers who understand that free glutamate is the problem "would interpret this statement to convey that the 'naturally occurring glutamates' [found in the product] are not 'MSG,' i.e., the very free glutamates that concern consumers and the FDA." Complaint ¶ 49. So he or she would interpret this statement, in combination with the prominent NO MSG ADDED representation to mean that although the food does not contain added "MSG," i.e., free glutamate, it does contain other types of glutamate such as bound glutamate which are not problematic, and are never referred to as "MSG." This fact—that because the disclaimer simply talks about "glutamates" and never discloses the presence of the specific kind of glutamate that is problematic, the disclaimer cannot possibly cure the deception even for consumers who notice it[.]

(*Id.*) Plaintiff goes on to argue that "naturally occurring" glutamates in the Product is deceptive because it falsely suggests that these glutamates do not cause the same problems that manufactured free glutamates found in other sources have. (*Id.* at 16.) Of course, on a motion to dismiss, the court is to draw all inferences in favor of the Plaintiff. However, to accept Plaintiff's argument here would require not an inference, but a logical leap. This the Court will not do. *See Santiful v. Wegmans*, 20-CV-2933, 2022 WL 268955, at *3 (S.D.N.Y. Jan. 28, 2022) (finding that plaintiffs failed to plausibly allege that a reasonable consumer would be misled by defendant's product, in part, because the allegations "do not relate to the Product specifically or provide any support for the claim that a reasonable consumer" would be misled.).

That Plaintiff has included in the complaint conclusions from now decades old FDA guidance does not change the Court's view. That is, Plaintiff alleges that in a 1995 FDA Backgrounder, the FDA stated that "[w]hile technically MSG is only one of several forms of free glutamate used in foods, consumers frequently use the term MSG to mean all free glutamate."

(Compl. ¶ 13.) "For this reason, [the] FDA considers foods whose labels say 'No MSG' or 'No Added MSG' to be misleading if the food contains ingredients that are sources of free glutamates, such as hydrolyzed protein." (*Id.* ¶ 22.) Plaintiff also references a 1996 notice of proposed rulemaking, which states that the "FDA tentatively finds that consumers are likely to perceive a 'No MSG' or 'No added MSG' claim on a label as indicating the absence of all forms of free glutamate in the food." (*Id.* ¶ 23.)

But, as Defendant rightfully argues, the FDA commentaries only concern whether the "NO MSG ADDED" statement standing alone is misleading. (Def.'s Mem. at 14–15.) The FDA guidance is silent on the effect of a prominent disclaimer addressing its concern. And, in any event, this Court takes the same view of the cited FDA guidance in this case as the court did in *Warren v. Whole Foods Market Group Inc.*, 574 F. Supp. 3d 102 (E.D.N.Y. 2021). There, the district court made clear that FDA regulations are "without consequence" when stating a claim under New York law and are not probative of liability. *See id.* at 113. The court in *Warren* further explained that instead, a plaintiff must plead facts to show that the packaging is likely misleading on its own, in context, to a reasonable consumer. *See id.* at 114. As in *Warren*, Plaintiff fails to do so here.[5]

[5] Defendant also sells the Product in a 14.05 oz can. (*See* Compl. ¶ 28; Def.'s Mem., Ex. B.) However, Plaintiff lacks standing to assert a claim concerning the canned Chicken Broth because she does not allege she purchased it, and therefore could not have been injured by it. *See Mhany Mgmt. Inc. v. Cnty. of Nassau*, 819 F.3d 581, 600 (2d Cir. 2016) (Article III requires a plaintiff to show "injury in fact"). To be sure, Plaintiff's ability to represent purchasers of the can presents only a class standing issue. *See NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 160 (2d Cir. 2012) (holding that "standing to assert claims on behalf of other purchasers d[oes] not turn on whether the plaintiff had Article III standing for offerings [plaintiff] did not purchase"). But, because Plaintiff has not stated a claim as to the Product, and because she did not purchase the can, Plaintiff does not have standing at all. Accordingly, the Court need not reach any arguments concerning the can. The Court notes, however, that its analysis of the can may differ from its analysis of the carton because the Clarifying Language on the can appears to be obscured by a photograph of a roasted chicken.

**II. Breach of Express Warranty Claim**

In just four sentences, Plaintiff argues that she adequately pleaded a breach of warranty claim. Specifically, Plaintiff maintains that she sufficiently alleged that the Product contained an express warranty and it was free from any glutamates, in any form, because the label stated: "NO MSG ADDED." (*See* Pl.'s Opp'n at 21.) Defendant contends that, among other things, Plaintiff's breach of express warranty claim fails because her argument is based on the same theory of deception as her GBL claims. (*See* Def.'s Mem. at 19.)

To sufficiently plead a claim for breach of warranty, a plaintiff must allege: (i) a material statement amounting to a warranty; (ii) the buyer's reliance on that warranty as a basis for the contract with his immediate seller; (iii) the breach of that warranty; and (iv) injury to the buyer caused by the breach. *Goldemberg v. Johnson & Johnson Cos., Inc.*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014). In New York, "any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." N.Y. U.C.C. Law § 2-313(b).

Plaintiff's breach of express warranty claim fails for the same reasons her GBL claims fail. Because the Court concluded that the "NO MSG ADDED" language contained on the Product's label with the Clarifying Language would not mislead a reasonable consumer to believe the Product did not contain any free glutamates in any form, Plaintiff's breach of warranty claim is dismissed. *See, e.g.*, *Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170, 185 (E.D.N.Y. 2018) (dismissing breach of warranty claim where, in the context of GBL claims, because the court already "concluded that a reasonable consumer would not interpret the "Florida's Natural" brand name as warranting that the products are free from trace amounts of glyphosate, plaintiff's breach of warranty claim is dismissed"). Because Plaintiff's breach of express warranty claim fails, Plaintiff's claim under the Magnuson-Moss Warranty Act also fails.

*See, e.g.*, *Dixon v. Ford Motor Co.*, No. 14-CV-6135, 2015 WL 6437612, at *7 (E.D.N.Y. Sept. 30, 2015) (dismissing Magnuson-Moss Warranty claim because "plaintiff has not adequately alleged an express or implied warranty claim").

**CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss is GRANTED.

SO ORDERED.

Dated: Brooklyn, New York
March 31, 2023

/s/ LDH
LASHANN DEARCY HALL
United States District Judge